## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) DALE A. GREGOR, JR.** and | ) | |
| **(2) DEBRA GREGOR, individually and as** | ) | |
| **Co-Guardians of KAYLA THETFORD,** | ) | |
| **an incapacitated adult; and** | ) | |
| **(3) JONATHON THETFORD, as parent and** | ) | |
| **next friend of Z.L.T., Z.D.T. and Z.A.T.,** | ) | |
| **minor children of Kayla and Jonathon Thetford,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 20-CV-128-** |
| | ) | **TCK-FHM** |
| | ) | |
| **(1) UNITED STATES OF AMERICA** | ) | **Closely related to:** |
| | ) | **19-CV-719-JED-FHM,** |
| **Defendant.** | ) | **filed Dec. 30, 2019** |

## COMPLAINT

COME NOW Plaintiffs Dale A. Gregor and Debra Gregor, individually and as co-guardians of Kayla Thetford, an incapacitated adult, and Jonathon Thetford as next friend of Z.L.T., Z.D.T. and Z.A.T., minors, by and through their attorneys, George W. Braly and William W. Speed of Braly, Braly, Speed & Morris, PLLC, and Mark Burgess of Burgess Law Firm PLLC, and allege as follows:

### PRELIMINARY MATTER - - ANOTHER ACTION PENDING

1.      On December 30, 2019, Plaintiffs filed a Complaint in this Court against the United States pursuant to the Federal Tort Claims Act (FTCA). See 19-CV-00719-JED-FHM, Complaint, Doc. #2.

2.      On March 5, 2020, Defendant United States filed a Motion to Dismiss that Complaint. See 19-CV-00719-JED-FHM, Mtn. to Dismiss, Doc. #7.

3.     This Complaint is now being filed in order to remove the question of the timeliness of the previously filed complaint, raised in Defendant United States' Motion to Dismiss filed in case number 19-CV-00719-JED-FHM. Defendant United States asserts the Court lacks jurisdiction in 19-CV-719, as described below. The allegations of negligence in the earlier filed case are substantially the same as those alleged now in this case.

4.     In its Motion to Dismiss filed in 19-CV-719, the United States argues that Plaintiffs filed their Complaint two (2) days too early therefore the United States had not had its plenary opportunity to consider the administrative claims which were sent by Plaintiffs on June 27, 2019 and which the United States acknowledges were presented to and received by it on July 1, 2019, and which were formally rejected on January 6, 2020.

5.     The United States argues that the filing of Plaintiffs' Complaint on December 30, 2019, was too early because it was not "six months" after the United States' receipt of the formal "Form 95" Tort Claim notices. Even though that Complaint was filed 183 days after the United States' acknowledged receipt of the tort claim notices, the United States argues the Complaint was still premature. As a result, the United States asserts this Court lacks jurisdiction to hear that earlier Complaint against the United States.

6.     The U.S. Department of Health & Human Services (DHHS) Office of General Counsel mailed its denial of all four claims on January 6, 2020. In its denial, the DHHS notes Plaintiffs have six (6) months from January 6, 2020 in which to file suit against the United States.

7.     Accordingly, in order to resolve any doubt as to administrative exhaustion and this Court's jurisdiction over Plaintiffs' claims, this new, but substantially identical,

Complaint is promptly and timely filed, as detailed below.

## PARTIES, JURISDICTION AND VENUE

8.      This action arises under 28 U.S.C. §§ 1346(b) and 2671 *et seq.*

9.      Plaintiffs Dale A. Gregor and Debra Gregor are residents of Drumright, Creek County, State of Oklahoma, and are the duly appointed Co-Guardians of the person and property of Kayla Thetford, an incapacitated adult, by virtue of Letters of General Co-Guardianship issued on June 17, 2019 by the District Court of Creek County, State of Oklahoma, in case number PG-2019-11.

10.      Plaintiff Jonathon Thetford is a resident of Canadian County, State of Oklahoma, and is the natural father of Kayla Thetford's three minor children, Z.L.T., Z.D.T., and Z.A.T. Mr. Thetford is Kayla Thetford's ex-husband and he now has physical custody of said children due to her catastrophic permanent injuries and resulting physical incapacity.

11.      This action is commenced more than six (6) months after the United States received the Administrative Tort Claims filed by Plaintiffs on July 1, 2019.

12.      This action is commenced less than six (6) months after the mailing of the DHHS letter of denial dated January 6, 2020.

13.      Plaintiffs' Federal Tort Claim Notices were timely sent. The six-month time for administrative review of those claims expired not later than January 1, 2020, without the United States acting on said claims. The formal denial of those claims by the United States was mailed to Plaintiffs' counsel on or about January 6, 2020. Therefore, this Complaint, filed prior to July 6, 2020, is timely filed.

3

14.     The Plaintiffs have fully complied with the provisions of 28 U.S.C. §§ 2401(b) and 2675(a).

15.     The acts and omissions herein complained of occurred at the community health center and hospital known as the Muscogee Creek Nation Community Hospital/Clinic (hereinafter referred to as "the MCNCH") located in Okemah, Okfuskee County, State of Oklahoma.

16.     The MCNCH is open to the public and is not restricted to members of any Indian tribe.

17.     At all times relevant to these events, Defendant United States, by and through the Indian Health Service and/or the Department of Health and Human Services and the Muscogee Creek Nation, operated the hospital and community health center known as the MCNCH.

18.     The MCNCH  and its emergency room are federally supported, pursuant to the provisions of  42 U.S.C. § 233(g)(4).

19.     The MCNCH is a Federally Supported Health Care Center. As such its employees along with physicians and other health care providers who have a contractual relationship with the MCNCH, are each "deemed" to be a part of or an employee of the Public Health Service for the purposes of claims under the Federal Tort Claim Act. Title 42 USC § 233(g)(1)(A), states:

> For purposes of this section and subject to the approval by the Secretary of an application under subparagraph (D), an entity described in paragraph (4), and any officer, governing board member, or employee of such an entity, and any

contractor of such an entity who is a physician or other licensed
or certified health care practitioner (subject to paragraph (5)),
shall be deemed to be an employee of the Public
Health Service. . .

20.     Dr. Michael Clinton West is a physician licensed in Oklahoma. At the time of
the medical care and treatment of Kayla Thetford at the MCNCH in Okfuskee County, Dr.
West was working at the MCNCH in Okfuskee County and provided medical care and
treatment of Kayla Thetford.

21.     Dr. West was contractually obligated to perform medical services at the
MCNCH.

22.     Dr. West undertook obligations that include contractual obligations with the
MCNCH as well as another entity, a physician service provider known as EmCare
Physician Services, Inc.

23.     Jurisdiction is proper before this Court pursuant to 28 U.S.C. §§ 2401(b),
1346(b), 1367(a) and 1402(b), and specifically pursuant to 42 USC § 233 (g)(4).

24.     Venue is proper in this Court, pursuant to 28 USC § 1391(e).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

25.     On or about Sunday, January 7, 2018, Kayla Thetford presented to the
MCNCH Emergency Room in Okemah, Oklahoma, with headache, dizziness, nausea,
vomiting, and numbness and tingling sensation in the right side of her face, right arm and
right leg.

26.     Dr. West and other persons employed by or contractually obligated as health
care providers to the MCNCH and working at the MCNCH, examined and treated Kayla

Thetford.

27.     Thereafter, a diagnosis of vertigo and migraine headache was made. In conjunction with that diagnosis, Kayla Thetford was prescribed two antihistamines and a steroid medication and discharged home.

28.     During the time she was being evaluated at the MCNCH, the staff of the MCNCH were repeatedly asked by Kayla Thetford's attending family member to rule out the possibility of a stroke.

29.     Defendant United States and its employees, agents, servants, and ostensible agents, servants and the staff of the MCNCH did not rule out the presence of a stroke.

30.     No medical or nursing care provider at the MCNCH provided any patient education with respect to a possible stroke.

31.     The medical personnel and staff providing care at the MCNCH failed to seek and obtain essential diagnostic testing required in order to rule out a possible stroke or transient ischemic attack (TIA) being suffered by Kayla Thetford.

32.     The policies, procedures, and practices in effect at the MCNCH were either not followed or were inadequate to ensure that Kayla Thetford and patients similar to Kayla Thetford would be provided with appropriate diagnostic testing.

33.     The policies, procedures, and practices at the MCNCH were either not followed or were inadequate to ensure that Kayla Thetford and patients similar to Kayla Thetford would be provided with appropriate treatment and medication known to prevent the near term progression and/or reoccurrence of a stroke.

34.     On or about January 9, 2018, Kayla Thetford presented to the emergency

room of the Stillwater Medical Center exhibiting symptoms of a full-blown stroke.

35.     From Stillwater Medical Center she was emergently transferred to OU Medical Center for a higher level of care.

36.     Kayla Thetford suffered a reoccurrence or progression of the earlier stroke from which she was suffering at the time she was a patient at the MCNCH, Emergency Room on January 7, 2018.

37.     Kayla Thetford was discharged from OU Medical Center on February 7, 2018 to a long-term acute care facility. She was discharged to her parents' home more than three months later, on May 22, 2018.

38.     At the time of her injury, Kayla Thetford was 31 years old and a single mother to the three young children named herein, ages 8, 7 and 3, who lived with her.

39.     Kayla Thetford now has a tracheostomy and a stomach feeding tube. She suffers from quadriplegia and is unable to speak.

40.     Kayla Thetford is not cognitively impaired, and she is able to understand what is being said to her. However, she is unable to communicate with those around her except by limited head movements, squeezing a person's hand, or sometimes mouthing words or moving one of her feet.

41.     Due to her disability, on or about June 17, 2019, her parents, Dale and Debra Gregor were appointed as her Co-Guardians.

42.     Due to her massive brain injury Kayla Thetford was unable to act upon any knowledge attributable to her of the circumstances giving rise to the medical issues surrounding the reasons she suffered a second stroke on or about January 9, 2018, until her

Guardians were appointed on or about June 17, 2019.

43.     Kayla Thetford is completely dependent upon her parents, Dale and Debra Gregor, for her full-time, 24/7 care, which they have faithfully provided since she was discharged to their home on May 22, 2018.

44.     Typically, a patient with injuries similar to those suffered by Kayla Thetford, requires 24/7 care at a skill level that is commensurate with full time skilled nursing care.

45.     Kayla Thetford can no longer care for herself or her three children, therefore her children now live with their father, Jonathon Thetford.

## FIRST CAUSE OF ACTION

46.     Plaintiffs incorporate each of the previous allegations into this First Cause of Action.

47.     Dr. West was subject to supervision and direction of his activities at the MCNCH by the members of its management and staff.

48.     Dr. West was contractually obligated directly to the MCNCH with respect to his activities at that facility.

49.     Dr. West was contractually bound to comply with the MCNCH physician by-laws, rules, and regulations and various other obligation at the MCNCH.

50.     Dr. West negligently failed to properly and timely examine, diagnose and treat Kayla Thetford.

51.     Dr. West owed Kayla Thetford the duty to exercise that degree of skill, diligence and foresight exercised by and expected of physicians.

52.     The medical care and treatment provided to Kayla Thetford by Dr. West

departed from accepted standards of medical care so as to constitute medical negligence.

53.     As a direct and proximate result of the negligence of Dr. West in failing to diagnose and emergently and timely treat Kayla Thetford's symptoms, consistent with a likely incipient stroke, Kayla Thetford suffered severe and permanent bodily injuries, disfigurement, and physical impairment; physical and mental pain and suffering; loss of companionship or society; loss of future income and earning capacity; and incurred past, and will incur future, expenses for medical care and treatment, as well as other life care expenses.

54.     With the financial resources to provide lifetime 24/7 skilled nursing care, and family members who have a personal interest in her care, Kayla will likely live a near normal life expectancy.

55.     Defendant United States is liable for the acts and omissions of Dr. West.

## SECOND CAUSE OF ACTION

56.     Plaintiffs incorporate each of the previous allegations into this second cause of action.

57.     Pursuant to 25 U.S.C. § 5321 *et seq.,* and 28 U.S.C. § 2671 *et seq.* (FTCA), the United States of America is a defendant in its capacity as the legally responsible entity for the actions and omissions of one or more of the following:

   a.   The Department of Health and Human Services, and its agency,
   b.   The Indian Health Service (IHS); and
   c.   The Indian Health Services' contract service unit, namely the MCNCH in Okemah, Oklahoma; and
   d.   The Department of Health and Human Services pursuant to the provisions of

the Federally Supported Health Care Centers Assistance Act (FSHCAA); and

e.   The agents, contract entities, and employees of the MCNCH community care facility among whom are various individual nurses, technicians, doctors and allied health care practitioners; and

f.   Medical care providers who have a contractual relationship with the FSHCAA facility known as the MCNCH.

58.   Based upon multiple, explicit representations from counsel for the Muscogee Creek Nation Department of Health (a division of the Muscogee Creek Nation), Dr. West was an employee, or deemed to be an employee, of Defendant United States through the liability mechanism established by the Federal Tort Claims Act and other related transactions between agencies of the United States and the Muscogee Creek Nation and the Federally Supported Health Care Center identified as the MCNCH.

59.   The representations referred to in the previous paragraph include an affirmative assertion by Counsel for the Muscogee Creek Nation Department of Health, made on March 13, 2020, that all of the medical personnel who provided services to Kayla Thetford at the MCNCH are, and were at all times relevant to this action, covered by the FTCA for liability arising out of their care of patients at the MCNCH.

60.   Defendant United States is liable for the relevant acts and omissions of Dr. West and other medical and technical personnel at the MCNCH who provided or were responsible for providing medical services to Kayla Thetford.

61.   Defendant United States is liable for the acts and omissions of each direct employee or each person working as a doctor, nurse, or allied professional at that facility who had any contractual relationship with the MCNCH or otherwise were employed by

the MCNCH.

62.      As a direct and proximate result of the negligence of Defendant United States and its employees, agents, servants, ostensible agents and ostensible servants, its "deemed" employees, and contract entities, Kayla Thetford suffered severe and permanent bodily injuries, disfigurement, and physical impairment; physical and mental pain and suffering; loss of companionship or society; loss of the enjoyment of life; loss of earning capacity and associated future earnings; and incurred past, and will incur future, expenses for medical care and treatment, as well as other life care expenses.

**THIRD CAUSE OF ACTION**

63.      Plaintiffs incorporate each of the previous allegations into this Third  cause of action.

64.      As a direct and proximate result of Defendant's negligence, Kayla Thetford's three minor children, Z.L.T., Z.D.T. and Z.A.T., have each suffered the loss of parental consortium due to Kayla Thetford's permanent injuries.

**FOURTH CAUSE OF ACTION**

65.      Plaintiffs incorporate each of the previous allegations into this Fourth cause of action.

66.      As a direct and proximate result of Defendant's negligence, Kayla Thetford's parents, Dale and Debra Gregor, have each suffered damages, including, without limitation, loss of consortium with their daughter.

67.      In addition, Dale and Debra Gregor are entitled to compensation in *quantum meruit*, for the equivalent and substitute services they have provided as surrogates for the

24/7/365 skilled nursing care required by Kayla Thetford.

## CLAIMS FOR RELIEF

68.    The following elements of damages are provided here to describe the broadest range and scope of the legally available categories of damages allowed by law for each or all of the Plaintiffs, and to put Defendant on notice of all such possible claims and related considerations, including, but not limited to the following:

A.  Great physical and mental pain and suffering;

B.  Disfigurement;

C.  Loss of enjoyment of life;

D.  Self-enforced isolation of Kayla Thetford often required to mitigate the risk of opportunistic infections;

E.  Loss of love and companionship;

F.  Loss of consortium;

G.  Loss of earnings and opportunities for earnings and the accumulation of related assets and benefits;

H.  *Quantum meruit* compensation for 24/7 in-home attendant nursing care provided by Kayla Thetford's parents;

I.  Medical, rehabilitative, and life care expenses, related to and including, but not limited to:

1.    Complex case management services;

2.    24/7 skilled nursing care;

3.    Possible cognitive deficits;

4.    Speech and language disabilities;

5.    Swallowing and feeding disorders;

6.    Asthma, reactive airway disease and lung compromise;

7.    Physical therapy;

8.    Potential vocational rehabilitations depending on the effectiveness of computer-based communication devices;

9.    Recurrent illnesses and hospitalizations;

10.   Renal, pulmonary and cardiac care;

11.   Medication management;

12.   Pain management;

13.   Skin integrity management;

14.   Orthopedic surgery and management;

15.   Assistive medical, living and communication devices;

16.   Assistance with all activities of daily living, including but not limited to personal care and hygiene, elimination of bodily wastes, transportation and household management;

17.   Handicapped housing and transportation, including but not limited to design and construction of a special purpose home arranged and equipped to provide for Kayla's unique daily living needs;

J. Loss of income and asset accumulation from wages, salaries, and benefits;

K. Loss of insurability;

L. Expenses associated with management of complex governmental regulatory, tax and accounting obligations; and

M. Other economic and noneconomic losses, the exact amount to be determined at trial.

**WHEREFORE,** Plaintiffs pray for a judgment against Defendant United States for monetary damages in the following amounts, as stated in the FTCA Form 95 claims previously submitted to the United States:

a.   To Plaintiffs Dale A. Gregor and Debra Gregor, individually and as Co-Guardians of Kayla Thetford, for the benefit of said ward, the amount of $90,000,000, plus interest, costs, attorney fees and such other relief to which said Plaintiffs, directly, and for and on behalf of Kayla Thetford, are entitled to receive by law or equity; and

b.   To Jonathon Thetford, as next friend of the three minor children Z.L.T., Z.D.T. and Z.A.T., for the benefit of said minor children, the total sum of $30,000,000 ($10,000,000 to each child), plus interest, costs, attorney fees and such other relief to which

said Plaintiff, for and on behalf of said minor children, is entitled to receive by law or equity.

Respectfully submitted,

s/ George W. Braly
George W. Braly, OBA# 1056
William W. Speed, OBA# 19031
BRALY, BRALY, SPEED & MORRIS, PLLC
201 W. 14th St.
P.O. Box 2739
Ada, OK 74821
Tel. 580-436-0871
Fax 580-436-0889
gwbraly@gami.com
williamspeed@bbsmlaw.com

-and-

Mark C. Burgess, OBA# 33324
Burgess Law Firm, PLLC
4201 Texas Boulevard
Texarkana, TX 75503
Tel. 903-838-4450
Fax 844-270-5674
mark@markburgesslaw.com

ATTORNEYS FOR PLAINTIFFS

ATTORNEY LIEN CLAIMED

## CERTIFICATE OF SERVICE

A copy of this Complaint was sent to the following Counsel of record in case **19-CV-719-JED-FHM,** by mail and email, as follows:

UNITED STATES OF AMERICA
R. TRENT SHORES, United States Attorney
c/o Nolan M. Fields IV, OBA No. 31550
c/o Rachael F. Zintgraff, OBA No. 31597
Assistant United States Attorneys
110 West 7th Street, Suite 300
Tulsa, OK 74119

Nolan.Fields@usdoj.gov
Rachael.Zintgraff@usdoj.gov

s/ George W. Braly